IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA VO,                                        Case No. 3:25-cv-01602-JR

        Plaintiff,                                FINDINGS AND
                                                   RECOMMENDATION
        v.

META PLATFORMS, INC.,

        Defendant.

_____

RUSSO, Magistrate Judge:

Pro se plaintiff Jessica Vo initiated this action against defendant Meta Platforms, Inc. alleging employment discrimination and retaliation. Defendant now moves to compel arbitration pursuant to the parties' contract and Federal Arbitration Act ("FAA"). For the reasons set forth below, defendant's motion should be granted.

Page 1 – FINDINGS AND RECOMMENDATION

## BACKGROUND

On May 27, 2021, defendant rendered an offer of employment to plaintiff for the position of Strategic Initiatives Program Manager. Compl. pg. 5 (doc. 1); Def.'s Mot. Compel Arbitration 2 (doc. 18). As a condition of employment, plaintiff received, among other documents, a "Mutual Arbitration Agreement" ("Agreement"). McKenna Decl. ¶¶ 4-7 (doc. 19). On March 30, 2021, plaintiff signed and returned the Agreement. McKenna Decl. Exs. A-B (doc. 19).

Pursuant to the Agreement, both parties agreed to arbitrate all employment-related claims:

**Claims Covered by the Agreement**
Employer and Employee agree to arbitrate before a neutral arbitrator any and all existing or future disputes or claims between Employee and Employer, that arise out of or relate to Employee's recruitment, employment or separation from employment with Employer, including claims involving any current or former officer, director, shareholder, agent or employee of Employer, whether the disputes or claims arise under common law, or in tort, contract, or pursuant to a statute, regulation, or ordinance now in existence or which may in the future be enacted or recognized, including, but not limited to, the following claims ("Covered Claims"):

• claims for fraud, promissory estoppel, fraudulent inducement of contract or breach of contract or contractual obligation.

• claims for wrongful termination of employment, violation of public policy, constructive discharge, infliction of emotional distress, misrepresentation, conversion, embezzlement, interference with contract or prospective economic advantage, defamation, unfair business practices, and any other tort or tort-like causes of action relating to or arising from the employment relationship or termination thereof.

• claims for discrimination, harassment or retaliation, whether on the basis of age, sex, race, national origin, religion, disability or any other unlawful basis, under any and all federal, state, or municipal statutes, regulations, ordinances or common law, including but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, and including claims under the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, and the Worker Adjustment and Retraining Notification Act.

- claims for non-payment, incorrect payment, or overpayment of wages, commissions, bonuses, severance, and employee fringe benefits, stock options, stock grants and the like, whether such claims be pursuant to alleged express or implied contract or obligation, equity, or any federal, state, or municipal laws concerning wages, compensation or employee benefits, claims of failure to pay wages for all hours worked, failure to pay overtime, failure to pay wages due on termination, failure to provide accurate, itemized wage statements, entitlement to waiting time penalties and/or any other claims involving employee compensation issues.

- claims arising out of or relating to the grant, exercise, vesting and/or issuance of equity in the Company or options to purchase equity in the Company . . .

Nothing in this Agreement should be interpreted as restricting or prohibiting the Employee from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency charged with investigating and/or prosecuting complaints under any application federal, state or municipal law or regulation . . . However, any dispute or claim that is covered by this Agreement but not resolved through the federal, state, or local agency proceedings must be submitted to arbitration in accordance with this Agreement.

McKenna Decl. Ex. A, at 19-20 (doc. 19).

The Agreement also explicitly incorporated the American Arbitration Association rules and specified that the parties agreed to resolve covered disputes exclusively via arbitration:

**Final and Binding Arbitration**
WE UNDERSTAND AND AGREE THAT THE ARBITRATION OF DISPUTES AND CLAIMS UNDER THIS AGREEMENT SHALL BE INSTEAD OF A COURT TRIAL BEFORE A JUDGE AND/OR A JURY. We understand and agree that, by signing this Agreement, we are expressly waiving any and all rights to a trial before a judge and/or a jury regarding any disputes and claims which we now have or which we may in the future have that are subject to arbitration under this Agreement. We also understand and agree that the arbitrator's decision will be final and binding on both Employer and Employee, subject to review on the grounds set forth in the [FAA].

*Id.* at 20. The Agreement stated further that the FAA governed because "the Employer is engaged in transactions involving interstate commerce . . . To the extent not inconsistent with the FAA, this Agreement and its interpretation, validity, construction, enforcement and performance, as well as

Page 3 – FINDINGS AND RECOMMENDATION

disputes and/or claims arising under this Agreement, shall be governed by the law of the state where Employee works or worked at the time the arbitrable dispute or claim arose." *Id.* at 21.

Finally, the Agreement advised plaintiff to consult an attorney prior to signing and reiterated that her signature indicated consent to arbitrate any covered disputed:

> WE UNDERSTAND AND AGREE THAT WE HAVE BEEN ADVISED TO CONSULT WITH AN ATTORNEY OF OUR OWN CHOOSING BEFORE SIGNING THIS AGREEMENT, AND WE HAVE HAD AN OPPORTUNITY TO DO SO. WE AGREE THAT WE HAVE READ THIS AGREEMENT CAREFULLY AND UNDERSTAND THAT BY SIGNING IT, WE ARE WAIVING ALL RIGHTS TO A TRIAL OR HEARING BEFORE A JUDGE OR JURY OF ANY AND ALL DISPUTES AND CLAIMS SUBJECT TO ARBITRATION UNDER THIS AGREEMENT.

*Id.* at 23.

In May 2024, plaintiff, "with the approval of her manager, terminated the employment of a Caucasian subordinate, Teresa Silva, for poor performance and organization restructuring." Compl. pg. 5 (doc. 1). Ms. Silva then "filed a retaliatory complaint against [plaintiff] alleging misconduct based on a personal photo exchanged years earlier during a mutual friendship, outside of any supervisor-subordinate relationship." *Id.* "Ms. Silva had never reported the photo as inappropriate during her employment, and she continued to maintain a friendly, professional relationship with Plaintiff until her termination." *Id.* Shortly thereafter, defendant terminated plaintiff's employment.

In September 2025, plaintiff filed the present action alleging claims for: "Race and National Origin Discrimination (Title VII and § 1981)," "Disability Discrimination and Failure to Accommodate (ADA)," and "Retaliation (Title VII and ADA)." *Id.*

### STANDARD OF REVIEW

"In all contracts involving interstate commerce, the [FAA] specifies that written agreements to arbitrate controversies arising out of an existing contract shall be valid, irrevocable,

Page 4 – FINDINGS AND RECOMMENDATION

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Brown v. Union Pac. R.R. Co.*, 703 F.Supp.3d 1256, 1260 (D. Or. 2023) (citations and internal quotations omitted). As such, the "FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (citations and internal quotations omitted; emphasis in original).

"The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

Further, "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable evidence," provided that "the court [first] determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citations and internal quotations omitted). In other words, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*

"In deciding whether an agreement to arbitrate exists, a court should apply a summary judgment-style standard, meaning only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that an agreement to arbitrate exists." *Brown*, 703 F.Supp.3d at 1261 (citations and internal quotations and brackets omitted). "A court must give the party opposing a motion to compel arbitration the benefit of all reasonable

Page 5 – FINDINGS AND RECOMMENDATION

doubts and inferences that may arise," whereas the party "seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Id.* (citation and internal quotations omitted). Even so, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## DISCUSSION

Defendant contends the Court should compel arbitration because: (1) the "Agreement is valid and governed by the FAA," (2) "[t]here is no evidence of fraud, duress, or unconscionability," (3) "[p]laintiff assented [to the Agreement] by signing and then commencing and continuing employment with Meta on the terms provided," and (4) all "three causes of action fall squarely within the scope" of the Agreement. Def.'s Mot. Compel Arbitration 6 (doc. 18).

Plaintiff does not dispute the existence of the Agreement or that she signed it. *See, e.g.*, Pl.'s Resp. to Mot. Compel Arbitration 2 (doc. 23). Plaintiff also does not proffer any evidence in support of her response. She nonetheless opposes defendant's motion on the grounds that "the enforceability of arbitration is not automatic." *Id.* at 1. She then goes on to list five conditions – i.e., "[t]he arbitration agreement was presented as a mandatory, take-it-or-leave-it condition of employment"; "[o]nboarding materials include separate 'Pre-employment Conditions' referencing internal dispute resolution"; "[d]efendant failed to meaningfully provide or implement any internal dispute resolution process"; "[d]efendant's explanations for [her] termination shifted over time"; and the Agreement "does not clearly and unmistakably delegate threshold arbitrability questions" – that, according to plaintiff, "warrant judicial determination and limited discovery before arbitration may be compelled." *Id.* at 1-2.

Initially, the Court notes that the majority of the issues raised by plaintiff pertain to the merits of the underlying dispute, as opposed to the validity of the Agreement. *See Justice v. Rockwell Collins, Inc.*, 117 F.Supp.3d 1119, 1134 (D. Or. 2015), *aff'd*, 720 Fed.Appx. 365 (9th Cir. 2017) ("if a party fails to counter an argument that the opposing party makes . . . the court may treat that argument as conceded") (citation and internal quotations and brackets omitted).

In any event, the Court finds the Agreement valid and that plaintiff's claims are covered thereunder. "Federal courts apply ordinary state-law principles that govern the formation of contracts to determine whether the parties agreed to arbitrate." *Brown*, 703 F.Supp.3d at 1263 (citation and internal quotations omitted). And, under Oregon law, the procedural unconscionability doctrine is narrow; it requires evidence of oppression or surprise in the formation of the contract – i.e., that "that the arbitration clause was the product of deception or compulsion" – not merely unequal bargaining power or a mandatory employment agreement. *See, e.g.*, *Wilson v. Bristol-Myers Squibb Co.*, 2018 WL 2187443, *4 (D. Or. May 11, 2018); *Siggelkow v. Nw. Grp., Inc.*, 2019 WL 294759, *8 (D. Or. Jan. 22, 2019); *Tapley v. Cracker Barrel Old Country Store, Inc.*, 448 F.Supp.3d 1143, 1149 (D. Or. 2020).

Here, per the plain language of the Agreement, the parties unambiguously consented to arbitrate any disputes related, in relevant part, to plaintiff's termination or any perceived employment discrimination or retaliation based on race, national origin, or disability. McKenna Decl. Ex. A, at 19-21 (doc. 19). Plaintiff signed that agreement after being expressly advised to consult an attorney of her choosing. *Id.* at 23. She was additionally advised that her signature would be construed as a knowing and voluntary waiver of her right to pursue litigation. *Id.* Critically, plaintiff does not dispute these facts in opposing defendant's motion.

Page 7 – FINDINGS AND RECOMMENDATION

Courts within this District have repeatedly upheld arbitration agreements as valid under analogous circumstances. *See Siggelkow*, 2019 WL 294759 at \*7-8 ("[w]ithout more, the fact that Defendants 'foisted' the Arbitration Agreement upon Plaintiff with no ability to negotiate its terms does not make it procedurally unconscionable," noting that "Oregon law [sanctions the use of] take-it-or-leave it arbitration contracts in the context of beginning new employment") (collecting cases); *Tapley*, 448 F.Supp.3d at 1149 ("Oregon courts have consistently held that more than a contract of adhesion and unequal bargaining power is required to void an arbitration agreement") (citations and internal quotations omitted); *see also Gessele v. Jack in the Box, Inc.*, 427 F.Supp.3d 1276, 1293 (D. Or. 2019) (arbitration agreement electronically signed by the plaintiffs was "legally binding [and] acceptable"), *rev'd on other grounds*, 160 F.4th 1011 (9th Cir. 2025) (citing Or. Rev. Stat. § 84.004(8) and § 84.019(1)). And "Title VII, Section 1981, and [Or. Rev. Stat.] § 569A.030(1), which each embody strong policies against employment discrimination," do not foreclose the application of an otherwise valid arbitration agreement that was signed as a condition of employment. *Brown*, 703 F.Supp.3d at 1268.

Moreover, the Court finds that defendant has introduced clear and unmistakable evidence establishing that the parties delegated all threshold questions of arbitrability to the arbitrator. Indeed, the Ninth Circuit has upheld similar delegation clauses. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130-33 (9th Cir. 2015) (affirming the district court's decision, which held that incorporation of American Arbitration Association rules "clearly and unmistakably" delegated questions of arbitrability to the arbitrator). In sum, plaintiff's arguments in opposition do not defeat the Agreement, and any remaining questions about the scope or enforceability thereof must be resolved by the arbitrator. *Cf. New Prime Inc. v. Oliveira*, 586 U.S. 105, 111-12 (2019) ("[a]

Page 8 – FINDINGS AND RECOMMENDATION

delegation clause gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration").

## RECOMMENDATION

For the reasons stated above, defendant's Motion to Compel Arbitration (doc. 18) should be granted. Defendant's Motion to Stay Discovery Pending Resolution of the Motion to Compel Arbitration (doc. 25) should be denied as moot. This action is stayed, and the parties shall file Joint Status Reports apprising the Court of their arbitration efforts every 90 days (with the first report due 90 days after the District Judge's Order).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 20th day of April, 2026.

_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge

Page 9 – FINDINGS AND RECOMMENDATION